**RUSKIN v. WATSON.**

No. 2640-52.

United States District Court,
District of Columbia.

April 8, 1954.

Bailey, Stephens & Huetig, Jennings Bailey, Jr., Washington, D. C., for plaintiff.

E. L. Reynolds, Sol., U. S. Patent Office, Washington, D. C., J. Schimmel, Washington, D. C., of counsel, for defendant.

CURRAN, District Judge.

This is a civil action brought under the provisions of Section 4915 of the Revised Statutes, 35 U.S.C. 1946, Sec. 63,[1] in which the plaintiff seeks a judgment from this Court authorizing the defendant, Commissioner of Patents, to grant a patent to the plaintiff, based upon a single claim of plaintiff's patent application, serial number 779,209, filed October 10, 1947, entitled "Amine Compounds of Adenylic Acid and Process of Manufacturing Same."

The specification of the application states that the general object of the alleged invention is to provide therapeutic preparations consisting of amine compounds of adenylic acid, a known nucleotide by whose use certain undesirable effects accompanying the use of free adenylic acid are avoided, while at the same time the therapeutic activity of the amine compound can be utilized. The specific chemical compound is nikethamide adenylate, which is a product of the chemical combination of two previously known compounds: (1) nikethamide; and (2) adenylic acid.

On June 21, 1944 the plaintiff filed an application in the Patent Office which resulted, on March 25, 1947, in the issuance of patent number 2,417,841, disclosing and claiming a compound known as nicotinamide adenylate. The present application was filed October 10, 1947, less than one year after the issuance of patent 2,417,841.

The defendant contends that the plaintiff is not entitled to a patent in view of the reference to patent number 2,417,841 and in view of the decision of the Board of Appeals of the Patent Office. The Board of Appeals held that nikethamide adenylate is an unpatentable variant of that claimed in Claim 2 of the plaintiff's patent, number 2,417,841, and further, that nikethamide adenylate is a homologous compound differing from nicotinamide adenylate by a multiple of $CH_2$.

Nicotinamide adenylate has only two Hydrogen (H) atoms attached to the animo Nitrogen (H); while in nikethamide adenylate there are two methyl ($C_2H_5$) radicals attached to the same nitrogen atom.

It is not contradicted that compounds having similar structure which differ

1. [1952 Revision, 35 U.S.C. §§ 145, 146.]

from each other merely by one carbon atom and two Hydrogen atoms ($CH_2$) or a multiple thereof, are homologues.

■ Assuming, without deciding, that nikethamide adenylate and nicotinamide adenylate are homologous compounds, a presumption of unpatentability arises, and the burden is on the plaintiff to rebut that presumption by a showing that nikethamide adenylate possesses unobvious or unexpected beneficial properties, not actually possessed by nicotinamide adenylate.

The Court of Customs and Patent Appeals in the application of Henze, 181 F. 2d 196, 201, 202, 37 C.C.P.A., Patents, 1009, said:

"To those skilled in the chemical art, one homologue is not such an 'advance' over an adjacent member of the series as requires invention, unless the beneficial properties realized in the new homologue lie clearly outside of the expectations which knowledge of his science would inform the trained chemist should be inherent in the product. See Ellis on Patent Claims, Sections 474, 475. In the latter event, it may be possible to say that inventive genius and not mere skill of the calling was required to select the new compound, otherwise not."

■ The question presented here is whether or not nikethamide adenylate has been shown to have unexpected and unobvious properties not possessed by nicotinamide adenylate. The uncontradicted testimony was to the effect that Dr. Ruskin had several cases in which he had used nicotinamide adenylate and nikethamide adenylate. These cases involved muscular spasm, such as bursitis, ear noises and itching. In every case, after failure of the nicotinamide adenylate to give relief, nikethamide adenylate was effective. I find, therefore, that nikethamide adenylate has properties of a far different character than from those of nicotinamide adenylate; that is, that nikethamide adenylate possesses unobvious and unexpected benefi-

cial properties, not actually possessed by nicotinamide adenylate.

It is true that both nicotinamide and nikethamide have been used to some extent in the treatment for heart disease of various types. Both are of some effect in treating pellagra, although nikethamide alone is undesirable because of the high dosages required. Dr. Ruskin testified that nikethamide in high dosages caused convulsions.

I find that this is not a case of double patenting and that nikethamide adenylate is patentably distinct from nicotinamide adenylate.

Counsel for the plaintiff will prepare the appropriate findings of fact, conclusions of law and the judgment not inconsistent with this memorandum.